IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMES A. SOLTESZ, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Case No.   JFM-12-2422 |
| | ) | |
| SUSAN E. BALLARD-HIRSCH, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM**

Plaintiff James A. Soltesz ("Soltesz") filed this action, individually and derivatively on behalf of Government Services Integrated Process Team, LLC ("GSIPT" or the "company") (collectively, the "plaintiffs"), against defendant Susan E. Ballard-Hirsch ("Ballard-Hirsch") in the Circuit Court for Prince George's County.  Although plaintiffs' complaint alleged two counts of negligence under Maryland law, Ballard-Hirsch removed the case to this court on August 15, 2012 pursuant to 28 U.S.C. § 1441(a), invoking federal jurisdiction under 28 U.S.C. § 1331.  Now pending before this court is plaintiffs' motion for remand.  The issues have been fully briefed, and the court finds no hearing is necessary.  *See* Local Rule 105.6.  For the reasons stated below, plaintiffs' motion for remand is granted.

**BACKGROUND**

GSIPT is a Maryland limited liability company that was formed in 2003 to perform program management, engineering, architectural planning, and general consulting services for federal and state governments and private entities.  (Compl. ¶ 6.)  Soltesz is a minority member of GSIPT with a 35 percent ownership interest, and Ballard-Hirsch is the majority member with

a 65 percent share.  (*Id.* at ¶ 10.)  In addition to being GSIPT's majority member, Ballard-Hirsch is its CEO and managing member.  (*Id.* at ¶ 11.)  As its managing member, Ballard-Hirsch is responsible for the company's day-to-day operations, including the filing of all tax returns.  (*Id.* at ¶¶ 11-12.)

When GSIPT was formed, it elected to be taxed as a partnership so profits and losses would be passed through to the company's members in accordance with their relative percentage ownership.  (Answer to Mot. for Remand ("Remand Answer"), Ex. B at 1; Compl. at ¶ 14.)  Section IV of the company's operating agreement outlines how the profits, losses, and distributions are to be made.  (Remand Answer at 3.)

In 2008, GSIPT reported significant losses, which resulted in negative capital accounts for each member at the end of the tax year.  (Compl. at ¶ 15.)  The original 2008 tax return allocated losses between the members based on their stated ownership interest—that is, 35 percent for Soltesz and 65 percent for Ballard-Hirsch.  (*Id.*)  This original tax return was later amended because Ballard-Hirsch had personally guaranteed loans to GSIPT in 2008.  (*Id.* at ¶ 16.)  Her personal guarantee was treated as if she had injected additional cash into the company.  (*Id.*)  Therefore, the losses to the members were recalculated based on their relative tax basis, giving Ballard-Hirsch a larger negative capital account than Soltesz.  (*Id.* at ¶ 17.)  In addition to her 65 percent ownership, Ballard-Hirsch was specially allocated losses because of her personal loan guarantee.  (*Id.*)  By 2009, GSIPT reported a profit, but Ballard-Hirsch still had a negative capital account balance that was carried over due to the special allocation of 2008 losses.  (*Id.* at ¶ 19.)

The dispute in this case concerns tax returns prepared by the accounting firm Argy, Wiltse, and Robinson, P.C. ("Argy"), which Ballard-Hirsch retained on behalf of the company in

2009. (*Id.* at ¶ 18.) Soltesz alleges that for 2009 tax purposes, "GSIPT's positive income amount should have been used to offset [Ballard-Hirsch's] negative capital account balance to zero; this is referred to as the 'minimum gain chargeback.'" (*Id.* at ¶ 20.) According to Soltesz, "[o]nce income is allocated to each member to bring their respective capital accounts to zero, the remaining income should have been allocated based on [each member's] stated ownership percentage." (*Id.*) Argy did not, however, allocate the income from 2009 to offset Ballard-Hirsch's negative capital account balance. (*Id.* at ¶ 21.) Instead, at Ballard-Hirsch's direction, "the income for 2009 was allocated in proportion to the members' interests as identified in the operating agreement." (Remand Answer, Ex. B at 2.) Soltesz alleges that Ballard-Hirsch's "method of distributing income resulted in [Soltesz] over-reporting his income for his individual 2009 tax return and having an increased tax liability." (Compl. at ¶ 22.)

Ballard-Hirsch and Soltesz take their respective positions based on differing interpretations of the company's operating agreement. According to Ballard-Hirsch, Section IV, paragraph 3.b. explains "minimum gain chargeback" as it applies to the entity of GSIPT only. (Remand Answer, Ex. B at 4; *see also id.*, Ex. B, Attachment A at 8-11.) Ballard-Hirsch contends there is no equivalent provision in the operating agreement that addresses "partner minimum gain chargeback." (*Id.*) In a December 6, 2010 memorandum to Ballard-Hirsch, Argy explained that it was not required under the operating agreement to restore the members' negative capital account balances. (Remand Answer, Ex. B at 2.) Argy noted that although the operating agreement contains a "*partnership* minimum gain chargeback provision," it does not "contain a *partner* minimum gain chargeback provision." (*Id.* (emphasis added).) Accordingly, Argy concluded that the 2009 allocations of income "were made in accordance with the operating agreement." (*Id.*) Soltesz disagrees, alleging that the operating agreement "clearly

provides for a minimum gain chargeback and states that it is done before any other allocations." (Compl. at ¶ 35; *see also id.*, Ex. 1 at 1.)

On July 3, 2012, plaintiffs filed this lawsuit in the Circuit Court for Prince George's County, alleging that Ballard-Hirsch negligently filed improper tax returns on behalf of GSIPT. Specifically, plaintiffs contend that Ballard-Hirsch breached her duty to accurately complete all tax records on behalf of the company "when she failed to direct Argy to accurately reflect the minimum gain chargeback amount" on the company's 2009 tax returns. (Compl. at ¶¶ 43-44; 50-51.)

## ANALYSIS

### I.  Legal Standard

Removal of a state court action to a federal court is authorized by 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant … to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). It is well recognized that the burden of establishing federal subject matter jurisdiction "is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). Courts must strictly construe removal jurisdiction because of the significant federalism concerns that are implicated when removing proceedings originally filed in state courts. *Id.* (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)). Indeed, if federal jurisdiction over a cause of action is doubtful, a remand to state court is necessary. *Id.*

There is no allegation of diversity of citizenship in the present case. Therefore removal is proper only if this court could have originally exercised "federal question" jurisdiction over plaintiffs' complaint. Federal question jurisdiction exists over all civil actions that "arise under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether a complaint satisfies § 1331, courts apply the well-pleaded complaint rule, "look[ing] no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (internal quotations omitted). Under this standard, the "vast majority" of complaints that present a removable federal question are those in which "federal law creates the cause of action." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986). "In cases where federal law *creates* the cause of action, the courts of the United States unquestionably have federal subject matter jurisdiction," and removal from state to federal court is proper. *Mulcahey*, 29 F.3d at 151 (emphasis in original) (citing *Merrell Dow*, 478 U.S. at 808). In the present case, however, it is undisputed that state law—not federal law—creates plaintiffs' causes of action. But this does not end the inquiry.

It is well established that "federal question jurisdiction is not limited to cases where federal law creates the cause of action." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir. 1996). When, as here, "state law creates the cause of action, … federal jurisdiction depends on whether the plaintiff's demand 'necessarily depends on resolution of a *substantial* question of federal law.'" *Mulcahey*, 29 F.3d at 151 (emphasis in original) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28 (1983)). This type of federal jurisdiction is reserved for a "small class of cases," *Ormet Corp.*, 98 F.3d at 806, existing only "'where the

vindication of a right under state law necessarily turn[s] on some construction of federal law,'" *Merrell Dow*, 478 U.S. at 808 (quoting *Franchise Tax Bd.*, 463 U.S. at 9).

The Supreme Court has cautioned, however, that "in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow*, 478 U.S. at 810. Indeed, "the mere presence of a federal issue does not automatically confer federal question jurisdiction." *Id.* at 814. Accordingly, "this second pathway into federal court is reserved for the rarest of cases, and should not be permitted as a matter of course." *Varco v. Tyco Electronics Corp.*, No. RDB-08-1215, 2009 WL 728571, at *3 (D. Md. March 16, 2009) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

What is clear from the considerations outlined above is that there is no "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Nevertheless, the Supreme Court has summarized the relevant inquiry as follows: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*

**II.     Discussion**

Plaintiffs' two-count complaint alleging negligence under Maryland law does not present a set of circumstances that create federal jurisdiction under 28 U.S.C. § 1331. Plaintiffs argue that removal to this court was improper because the two common law causes of action arise under Maryland law and their resolution does not necessarily involve a substantial federal question. (*See* Mot. for Remand at 5.) Ballard-Hirsch responds that removal was appropriate

6

because the underlying issues in the negligence causes of action require the interpretation of the Internal Revenue Code and the Treasury Regulations.  (*See* Remand Answer at 1.)  Specifically, Ballard-Hirsch argues that to address plaintiffs' negligence claims, a court must necessarily analyze the meaning and application of two tax law principles: "partner minimum gain chargeback" and "entity minimum gain chargeback."  (*Id.* at 3.)  Because I agree with plaintiffs, this case is remanded to the Circuit Court for Prince George's County.

Plaintiffs' complaint does not necessarily raise a substantial federal question.  The Fourth Circuit has recognized that a "plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some … disputed question of federal law is a necessary element of one of the well-pleaded state claims.'"  *Pinney*, 402 F.3d at 442 (quoting *Franchise Tax Bd.*, 463 U.S. at 13).  "If a plaintiff can establish, without resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." *Id.* (citations omitted).  After a careful examination of plaintiffs' claims in the present case, it is clear that plaintiffs can establish the elements of each negligence cause of action without the resolution of an issue of federal law.

For a plaintiff to prevail on a claim of negligence in Maryland, he or she must prove the existence of: "(a) a duty owed by the defendant to the plaintiff; (b) a breach of that duty; and (c) injury proximately resulting from that breach." *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012).  Here, plaintiffs allege that Ballard-Hirsch had a duty to accurately complete all tax records on behalf of the company and that she breached this duty when she failed to direct Argy to accurately reflect the minimum gain chargeback amount on the company's 2009 tax returns.  This breach, plaintiffs claim, resulted in an unnecessary and unjust increase in Soltesz's tax liability and created a risk that GSIPT would breach federal law by filing improper tax returns.

At its core, this is a dispute about the interpretation of GSIPT's operating agreement—it does not necessarily involve the meaning or application of tax law principles. According to plaintiffs, the operating agreement "clearly provides for a minimum gain chargeback and states that it is done before any other allocations." (Compl. at ¶ 35.) Ballard-Hirsch contends, however, that the operating agreement explains minimum gain chargeback as it applies to the entity of GSIPT only and that there is no equivalent provision that addresses "partner" minimum gain chargeback. (Remand Answer, Ex. B at 4.) If plaintiffs' interpretation is correct, they will seek to prove Ballard-Hirsch's breach of duty through her failure to comply with the company's operating agreement. Plaintiffs will thus be able to establish all of the essential elements of their negligence causes of action without the resolution of any federal issues. *See Pinney*, 402 F.3d at 442. On the other hand, it is only if Ballard-Hirsch's interpretation of the operating agreement is accepted that the parties might dispute the correct tax treatment of GSIPT's 2009 profits in light of the operating agreement, the Internal Revenue Code, and the Treasury Regulations. *See* 26 U.S.C. § 704(a);[1] *id.* at § 704(b).[2] This is simply not a case in which "'the vindication of a right under state law *necessarily* turn[s] on some construction of federal law.'" *Merrell Dow*, 478 U.S. at 808 (emphasis added) (quoting *Franchise Tax Bd.*, 463 U.S. at 9). The need to interpret or construe federal tax law may never arise in this litigation. Accordingly, plaintiffs' complaint

---

[1] 26 U.S.C. § 704(a) provides: "A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this chapter, be determined by partnership agreement."

[2] 26 U.S.C. § 704(b) provides:
> A partner's distributive share of income, gain, loss deduction, or credit (or item thereof) shall be determined in accordance with the partner's interest in the partnership … if: (1) the partnership agreement does not provide as to the partner's distributive share of income, gain, loss, deduction or credit (or item thereof), or (2) the allocation to a partner under the agreement of income, gain, loss, deduction, or credit (or item thereof) does not have substantial economic effect.

does not necessarily raise a substantial federal question sufficient to invoke this court's § 1331 subject matter jurisdiction.

Even if plaintiffs' well-pleaded complaint raised a disputed and substantial question of federal law, the exercise of federal jurisdiction is still "subject to a possible veto" in light of "an assessment of any disruptive portent in exercising federal jurisdiction." *Grable*, 545 U.S. at 313-14. In construing *Merrell Dow*, the Supreme Court in *Grable* observed that a "general rule of exercising federal jurisdiction over state [tort] claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319. Here, exercising federal jurisdiction over a professional negligence claim resting on the violation of the Internal Revenue Code has the potential of upsetting the federal-state balance of judicial responsibilities by sweeping countless state-law claims into federal court. *See, e.g.*, *Singh v. Duane Morris LLP*, 538 F.3d 334, 340 (5th Cir. 2008) (noting that exercising federal jurisdiction over state-law legal malpractice claims involving trademark suits would "upend the balance between federal and state judicial responsibilities"). Thus, even if contested issues of federal law were necessarily raised in plaintiffs' complaint, I would nevertheless grant plaintiffs' motion for remand because the exercise of jurisdiction over this type of lawsuit would disrupt the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. This case simply does not "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for remand is GRANTED. A separate Order follows.


Date:   November 15, 2012                        /s/
                                    J. Frederick Motz
                                    United States District Judge